**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1426-22

IONNA KOTSOGIANNIS,

    Plaintiff-Respondent,

v.

JOHN DIMARAS,

    Defendant-Appellant.

_____

Argued November 28, 2023 – Decided January 29, 2024

Before Judges Whipple, Mayer and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1593-14.

Evan R. Weinstein argued the cause for appellant (Weinstein Family Law, attorneys; Evan R. Weinstein, of counsel and on the brief; Erika Ponne Handler and Julianne E. Kallas, on the briefs).

Sarir Zandi Silver argued the cause for respondent (Loren M. LaForge, LLC, attorneys; Loren M. LaForge, of counsel and on the brief; Sarir Zandi Silver, on the brief).

PER CURIAM

In this post-judgment matrimonial matter, defendant John Dimaras appeals from certain paragraphs of orders dated August 2, and December 20, 2022,[1] and the entirety of a January 4, 2023 order. Because the contested provisions of these orders resulted from an unenforceable February 16, 2022 consent order (CO), we reverse and remand for further proceedings.

I.

Defendant and plaintiff, Ioanna Kotsogiannis, divorced in 2015 and have an eleven-year-old son together. The parties' January 20, 2015 marital settlement agreement (MSA) was incorporated into a judgment of divorce (JOD), and designated plaintiff as the child's parent of primary residence and defendant as the "secondary residential custodial parent."

The MSA also incorporated certain terms from a prior court order, and provided defendant's parenting time would expand to alternating weekends and Wednesday overnights with the child, beginning on July 1, 2015. However, given concerns plaintiff had about defendant traveling with their son, the MSA

---

[1] Defendant specifically appeals from: paragraphs one to eight, ten, twenty to twenty-two, and twenty-six to twenty-eight of the August 2, 2022 order; and paragraphs one to twelve of the December 20, 2022 order. The challenged portions of these two orders pertained to issues of child support, parenting time, and counsel fees.

A-1426-22

provided neither party could "remove the minor child . . . more than a 125[-]mile radius [from] the George Washington Bridge," nor obtain a passport for the child without written consent from the other party. The MSA also obliged the parties to utilize a Parent Coordinator (PC) to resolve future custody and parenting time issues, and stated they also would "attempt to settle . . . disputes [arising under the MSA] by mediation before using the courts for any determination."

Moreover, the MSA obliged defendant to pay child support through the Probation Department (Probation) at the rate of $172 per week until July 1, 2015, when his child support payments would decrease to $67 per week to coincide with an anticipated increase in his parenting time. Notably, the child support figures were based on plaintiff grossing $160,000 per year, defendant grossing $80,000 per year, and defendant having 104 overnights with the child each year. But the MSA further stated the parties' income figures were "subject to income verification," which would "include the exchange of the prior year's income tax return[s], W-2[s], three most recent pay statements and any relevant employment contract." The parties also agreed "[i]f the[ir] incomes ha[d] changed, . . . child support w[ould] be recalculated."

Less than a year after the entry of JOD, defendant's parenting time was temporarily restricted and he was permitted to exercise only supervised

A-1426-22

parenting time, due to an ongoing investigation by the Division of Child Protection and Permanency. This modified arrangement continued until July 2017, when defendant again was allowed unsupervised parenting time. Thereafter, the parties returned to the parenting schedule set forth in the MSA.

In 2018, after the parties consulted with their son's therapist and their PC, they agreed to modify the parenting schedule so defendant would have alternating Wednesday overnights, instead of weekly overnights on Wednesdays. They further stipulated defendant's alternating weekends would include Sunday overnights going forward.

Probation attempted to conduct a triennial review of defendant's child support obligation in 2018, but it could not complete the process due to defendant's failure to "respon[d] to the Triennial Review Financial Request." Thus, his child support obligation remained at $67 per week. Three years later, Probation again was unable to complete its triennial review, this time because it could not "verify [defendant's o]ut-[o]f-[s]tate [e]mployment."

In September 2020, defendant provided the PC with his tax returns for 2017, 2018, and 2019 so the PC could address the parties' ongoing disputes over child support. The next month, the PC determined defendant was grossing $192,500, and plaintiff's average income over the prior three years was

$170,000. Therefore, the PC calculated defendant should pay $199 per week in child support, and possibly a supplemental amount, considering the parties' combined income was "above the [Child Support] Guideline[s] threshold." The PC suggested the parties discuss this "legal issue . . . with [their] attorneys" or agree on an amount to "add to the $199 per week." According to defendant, he began paying $199 per week in child support as of January 2021.

In October 2021, the parties agreed to mediate additional unresolved child support and parenting time issues. However, they failed to agree on a mediation date. Therefore, on November 23, 2021, plaintiff filed a motion for various relief, including: (1) a recalculation of defendant's child support obligation; (2) modification of the parenting time schedule; and (3) an award of counsel fees. Defendant opposed the motion and filed a cross-motion, asking the court for additional relief, including an order: (1) fixing a holiday and vacation parenting schedule; (2) removing the travel ban incorporated into the MSA and JOD; and (3) compelling plaintiff to cooperate in securing a passport for the parties' child.

In February 2022, the trial court ordered the parties to immediately attend mediation and promptly report back to the court afterwards so it could resolve any remaining issues in their cross-applications. Although mediation was unsuccessful, the parties agreed, through counsel, to allow the mediator to

arbitrate the issues raised in their respective motions and make binding recommendations on all but one issue—whether the child could travel internationally. Both parties also agreed to waive any conflict arising from the mediator assuming the role of arbitrator.[2]

Following extensive negotiations between counsel, they memorialized the terms of an arbitration agreement in a draft order, laying the groundwork for further litigation between the parties and ultimately, this appeal. The parties and counsel signed the CO before it was filed with the court on February 16, 2022.

The CO directed the parties would exchange income information, including their 2021 year-end paystubs, and return to the arbitrator "for [a] final determination of all issues . . . on March 2, 2022." The CO also stated, a "[c]ourt [o]rder with all binding decisions and the parties' signatures shall be presented to the [c]ourt no later than March 11, 2022." Additionally, the CO provided that "[i]f either party fail[ed] to abide by the [arbitrator's] binding recommendations

---

[2] In Minkowitz v. Israeli, we considered "the compatibility of the same party assuming the role of mediator and arbitrator," and held that "absent the parties' contract to the contrary, once a neutral assumes the role of mediator, [they] may not assume the role of arbitrator." 433 N.J. Super. 111, 142, 147-48 (App. Div. 2013).

and enter into [a] consent order by March 11, 2022," the draft consent order would be "converted into an [o]rder under the [five]-day rule,"[3] and forwarded to the court by the arbitrator. The arbitrator would also recommend "to the [c]ourt . . . whether the party refusing to abide by the terms of th[e CO] and the subsequent [o]rder containing the binding recommendations should be responsible to pay the counsel fees of the other [party]."

The parties met with the arbitrator on March 2, 2022, consistent with the CO. Five days later, defendant's attorney wrote to the arbitrator, asking that she "not issue any 'binding recommendation[s]'. . . and . . . not issue any 'non-binding recommendation' concerning international travel in this matter on March 11, 2022," notwithstanding the terms of the CO. Defendant's attorney claimed he expected "the proceedings" between the parties and the arbitrator would consist of two days. Further, he expressed concern that "[t]here was no mediation" and defendant was "not given any time" on March 2 "to present [his] positions" to the arbitrator.

Additionally, defendant's counsel asserted that in "[a]rbitration proceedings involving custody or parenting time," such as the proceedings in this case, there should have been "a record of all documentary evidence" and

---

[3] R. 4:42-1(c).

any testimony should have been "recorded verbatim."  Counsel stated, "[t]hat did not happen."  Therefore, he contended the arbitrator's "binding recommendation[s could] not be transmitted to the [c]ourt."

Critically, defendant's counsel also argued in his March 7 letter that the CO was "not consistent with the Rules of Court" and specifically "d[id] not adhere to R[ule] 5:1-5(b)(3)."  Thus, he warned if the arbitrator issued binding recommendations which were "not acceptable to one of the litigants, that litigant c[ould] commence litigation to vacate any [c]ourt [o]rder which set[] forth [her] recommendations."  Therefore, defendant's counsel suggested the parties prepare an amended consent order consistent with the Rules of Court, stating, "[w]e cannot . . . ignore the procedural flaws which were created, without intent on any of our parts."

Plaintiff disagreed with defendant's position.  Accordingly, on March 11, 2022, the arbitrator submitted a proposed form of order to the trial court entitled, "Order of Binding Recommendations of Arbitrator in Connection with Pending Motion and Cross[-]Motion," consistent with the terms of the CO.  One of the arbitrator's binding recommendations was that defendant pay $1,333.33 per month in child support, based on his gross base salary of $180,000, plaintiff's gross earned income of $170,000 per year, and defendant exercising 104

overnights per year with the parties' son. Further, the arbitrator recommended defendant pay supplemental child support in the sum of 7.5% of "any additional gross income he earn[ed]."

In the arbitrator's accompanying statement of reasons, she concluded defendant should have paid more child support than he did following the entry of the JOD, given his substantially increased income. Thus, she recommended he pay arrears of $33,532 for the period between July 1, 2015, and November 22, 2021, and additional arrears of $4,615.37 for the period between plaintiff filing her November 23, 2021 motion and March 8, 2022. The arbitrator reasoned that under the terms of the MSA, "the child support effective July 1, 2015 was temporary[,] . . . as the MSA specifically provided that the amount was subject to verification of income[,] which did not occur." The arbitrator further explained, "[d]efendant failed to provide his income information to . . . Probation when requested for the triennial review dating back to 2018." She added, "[d]efendant did not fulfill his obligation to support the child in a meaningful manner as he earned significantly more than $80,000 in July 2015 and as a result, the minor child did not share in the current income of both parties, namely [d]efendant."

A-1426-22

Regarding the parties' parenting time issues, the arbitrator recommended defendant's alternating "Wednesday overnight parenting time . . . be converted to a dinner visit every Wednesday," and the last six weeks of summer parenting time be alternated between the parties pursuant to her recommended schedule. In her statement of reasons, the arbitrator explained she recommended against the child traveling between his parents' homes in New Jersey and New York City "during the school week," based on his "present difficulties . . . in school," as documented in an "Intervention & Referral Services" report submitted to her by defendant. In that vein, although the arbitrator submitted a Child Support Guidelines Shared Parenting Worksheet with her recommendations, and the worksheet included an allocation of 104 overnights to defendant, she did not explain how she determined the applicable number of overnights, considering she recommended defendant no longer exercise overnight parenting time on alternating Wednesdays.

Finally, the arbitrator recommended each party submit a proposed holiday and vacation parenting plan to her by the end of March 2022 so she could issue a binding recommendation based on their proposals.

Defendant's attorney immediately wrote to the trial court on March 11, 2022, stating he "opposed the rendering of any form of binding or non[-]binding

10

recommendations" by the arbitrator, "[g]iven the procedurally defective manner in which [arbitration] was conducted." Defendant's attorney urged the judge not to sign the proposed order reflecting the arbitrator's recommendations, explaining the arbitrator did "not allow any testimony as to the issues of parenting time, child support, and travel," and "[n]o attempt was made to mediate any issue subsequent to [the arbitrator's] receipt of the parties' respective submissions[,] despite [defendant's] request . . . of the mediator/arbitrator to do so." Defendant's attorney also argued the CO was "not consistent with the Rules of Court," identifying various provisions of <u>Rule</u> 5:1-5 to which the CO did not "adhere[]." Defendant's attorney asked "the [c]ourt not [to] enter the [proposed form of o]rder without a hearing or conference." Nevertheless, the judge executed the arbitrator's proposed order on March 15, 2022, incorporating the binding recommendations therein.

Less than a month later, defendant moved for various forms of relief, including an order: (1) vacating the CO and the March 15, 2022 order; (2) vacating all travel restrictions incorporated into the MSA and JOD; (3) expanding his parenting time; (4) compelling the parties to engage in additional financial discovery; and (5) granting him an award of counsel fees and costs. Plaintiff opposed the motion and cross-moved for additional relief, including:

11

(1) enforcement of the CO and the March 15 order; and (2) an award of counsel fees.

Following argument, the judge entered an order on August 2, 2022: (1) denying defendant's request to vacate the CO and March 15 order; (2) granting plaintiff's request to enforce these orders; (3) denying defendant's request for counsel fees; and (4) awarding plaintiff counsel fees in the sum of $3,754.35.[4] The judge found there was no "basis . . . to support vacating the [CO] or March [15,] 2022 . . . [o]rder[]," considering "all parties were involved in the drafting of the [CO] and both [attorneys] discussed the language [of the CO at] great length, specifically as it related to the arbitration process." He added, "[t]his [c]ourt puts great emphasis on the fact that [d]efendant's counsel . . . assisted in the drafting of the language [of the CO]."

Regarding his counsel fee decision, the judge cited Rules 4:42-9 and 5:3-5(c), and stated:

> This [c]ourt does not find [d]efendant to be entitled to an award of counsel fees. The majority of [his] requested relief was denied and lacked [a] sufficient basis. Further, . . . [he] exhibits the ability to pay his own . . . counsel fees. . . . [T]he majority of the relief sought is based upon [his] counsel's contention that the

---

[4] Given our decision, we do not list the remaining challenged provisions of the August 2 order.

[CO] should be vacated entirely, which this [c]ourt found no basis for. . . .

Instead, . . . [p]laintiff shall be entitled to an award of counsel fees based on having to defend the enforceability of the [CO], even though both parties agreed and willingly entered into same, with every opportunity to object to its validity and process during mediation. Accordingly, this [c]ourt finds a partial award of counsel fees, in the amount of $3,754.35, to be equitable and appropriate given the circumstances.

Defendant moved for reconsideration of the August 2, 2022 order. Following argument, the judge denied the motion by order dated December 20, 2022. In the statement of reasons attached to the December 20 order, the judge found defendant primarily contested "three major rulings within the March [15,] 2022 order," which were "all affirmed in the August [2,] 2022 [o]rder," specifically: the loss of his "bimonthly Wednesday overnight parenting time"; the increase of his child support obligation to $1,333.33 per month; and the order that he "pay child support arrears for the period of 2015 to 2021 when he was paying $67 per week due [to] his lack of financial disclosure." The judge concluded defendant provided no evidence to support vacatur of the CO or March 15, 2022 order, and by extension, no basis to reconsider the August 2 order.

A-1426-22

The judge further observed neither party provided evidence that "any of the six factors" set forth under N.J.S.A. 2A:23B-23(a)[5] existed, and defendant

[5] Under N.J.S.A. 2A:23B-23(a), a court will vacate an arbitration award only if:

> (1) the award was procured by corruption, fraud, or other undue means;
>
> (2) the court finds evident partiality by an arbitrator; corruption by an arbitrator; or misconduct by an arbitrator prejudicing the rights of a party to the arbitration proceeding;
>
> (3) an arbitrator refused to postpone the hearing upon showing of sufficient cause for postponement, refused to consider evidence material to the controversy, or otherwise conducted the hearing contrary to section 15 of [the Arbitration Act (Act), N.J.S.A. 2A:23B-1 to -36], so as to substantially prejudice the rights of a party to the arbitration proceeding;
>
> (4) an arbitrator exceeded the arbitrator's powers;
>
> (5) there was no agreement to arbitrate, unless the person participated in the arbitration proceeding without raising the objection pursuant to subsection c. of section 15 of th[e A]ct not later than the beginning of the arbitration hearing; or
>
> (6) the arbitration was conducted without proper notice of the initiation of an arbitration as required in section 9 of th[e A]ct so as to substantially prejudice the rights of a party to the arbitration proceeding.
>
> [N.J.S.A. 2A:23B-23(a).]

14

failed to show "the child [wa]s threatened to be harmed by the change in [defendant's] parenting time." Moreover, the judge determined defendant's child support obligation, including the "award of supplemental child support" was properly based on the parties' combined incomes, as well as "the child's needs and the financial circumstances of the parties." He also found the arbitrator's "child support calculation was based on [d]efendant having 104 overnights when he has substantially less, approximately [seventy]," and "[d]efendant's income in 2021 exceeded $220,000." Accordingly, the judge found "the arbitrator's calculation [was] favorable to [d]efendant in more ways than one."

Regarding defendant's arrearage argument, the judge concluded there was no basis to reconsider the amount of arrears calculated by the arbitrator, considering the arrearages were based on defendant's significantly increased income following the entry of the JOD, which he failed to disclose in a timely fashion. Considering these findings, the judge concluded "[d]efendant failed to provide any evidence and failed to make any cogent argument that the . . . August [2,] 2022 [o]rder was based on a palpably incorrect basis or that [the judge] failed to consider or appreciate the significance of probative, competent evidence."

A-1426-22

Lastly, the judge awarded plaintiff $5,000 in counsel fees, finding "[d]efendant's financial circumstances exceed that of [p]laintiff's," defendant "ha[d] the ability to pay his own fees," and he "acted in bad faith by consenting to the use of an arbitrator[,] then filing to vacate the arbitrator's order shortly after it was imposed, and . . . filing for . . . reconsideration based . . . on his dissatisfaction with the arbitrator's decision without attempting to meet the standards for a motion for reconsideration."

On January 4, 2023, the judge executed an order submitted by the arbitrator, establishing a holiday and vacation parenting schedule consistent with the terms of the CO and the March 15, 2022 order. The order reflected that the arbitrator had prepared the order after considering the parties' respective proposals for a holiday and vacation parenting plan, as well as the CO and the March 15, 2022 order. This appeal followed.

## II.

On appeal, defendant raises three main arguments and multiple secondary arguments. He primarily contends the trial court erred by: (1) "upholding the parties' February 16, 2022 [CO]," even though it "failed to comport with" Rule 5:1-5(b); (2) denying his reconsideration motion; and (3) awarding counsel fees to plaintiff. Therefore, as discussed, he seeks reversal of: (1) paragraphs one

through eight, ten, twenty through twenty-two, and twenty-six through twenty-eight of the August 2, 2022 order; (2) paragraphs one through twelve of the December 20, 2022 order; and (3) the entirety of the January 4, 2023 order.

Because we agree with defendant that the CO was mistakenly entered and enforced, we now reverse the challenged provisions of the August 2, and December 20, 2022 orders, and the January 4, 2023 order, and remand for further proceedings. Given this determination, we do not reach defendant's remaining arguments. We add the following comments.

As a threshold matter, we recognize "[a]rbitration should spell [a] litigation's conclusion, rather than its beginning." Borough of E. Rutherford v. E. Rutherford PBA Loc. 275, 213 N.J. 190, 201 (2013) (first alteration in original) (quoting N.J. Tpk. Auth. v. Loc. 196, 190 N.J. 283, 292 (2007)). In fact, "[t]he public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J. Mfrs. Ins. Grp., 220 N.J. 544, 556 (2015). This "strong public policy" also favors "using arbitration in family litigation." Minkowitz, 433 N.J. Super. at 131-32. Accordingly, "courts grant arbitration awards considerable deference." E. Rutherford PBA Loc., 213 N.J. at 201.

Although "the scope of review of an arbitration award is narrow," Fawzy v. Fawzy, 199 N.J. 456, 470 (2009), a court's constitutional duty to protect children from harm may command appellate review of arbitration awards involving custody and parenting time, Johnson v. Johnson, 204 N.J. 529, 547 (2010) ("[W]here a prima facie claim of harm [to a child] is advanced, our substantive review is compelled."); see also Fawzy, 199 N.J. at 462 ("Only a threat of harm will justify judicial infringement on the fundamental right of parents to decide how to resolve disputes over their children's upbringing."). And, as already discussed, N.J.S.A. 2A:23B-23 further specifies the limited grounds for vacating an arbitration award. Because the trial court's decision to affirm or vacate an arbitration award is a decision of law, our review is de novo. Minkowitz, 433 N.J. Super. at 136; see also Manger v. Manger, 417 N.J. Super. 370, 376 (App. Div. 2010).

By contrast, we review a Family Part judge's decision concerning custody and parenting time for an abuse of discretion. See Randazzo v. Randazzo, 184 N.J. 101, 113 (2005). An abuse of discretion occurs when a trial court's decision "rested on an impermissible basis, considered irrelevant or inappropriate factors, failed to consider controlling legal principles[,] or made findings inconsistent

18

with or unsupported by competent evidence." Elrom v. Elrom, 439 N.J. Super. 424, 434 (App. Div. 2015) (internal quotation marks and citations omitted).

Likewise, a Family Part judge is afforded "substantial discretion in making a child support award" and "[i]f consistent with the law, such an award 'will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence.'" Foust v. Glaser, 340 N.J. Super. 312, 315-16 (App. Div. 2001) (quoting Raynor v. Raynor, 319 N.J. Super. 591, 605 (App. Div. 1999)).

Similarly, a trial court's counsel fee decision is reviewed under an abuse of discretion standard. See Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009). But a trial court's award of fees may be reversed where the judge's findings in determining the award are unsupported or no longer accurate following appeal. See Slutsky v. Slutsky, 451 N.J. Super. 332, 365-68 (App. Div. 2017) ("The provision ordering defendant to pay plaintiff's fees is vacated" "because it was based on insufficient, and now, vacated findings.").

We also review a trial court's decision to grant or deny a motion for reconsideration for an abuse of discretion. See Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). Reconsideration is reserved for "those cases which fall into that narrow corridor in which either (1) the [c]ourt has expressed

its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Castano v. Augustine, 475 N.J. Super. 71, 78 (App. Div. 2023) (alterations in original) (quoting Triffin v. SHS Grp., LLC, 466 N.J. Super. 460, 466 (App. Div. 2021)).

Governed by these standards, the challenged provisions of the orders on appeal cannot stand because they flow from a CO that failed to comport with Rule 5:1-5(b).

Rule 5:1-5 became effective on September 1, 2015, and—with few exceptions not applicable here—"applies to all . . . [c]onsent [o]rders to [a]rbitrate" disputes in the Family Part. R. 5:1-5(a). Further, Rule 5:1-5(b) identifies the prerequisites for an enforceable consent order, including an arbitration questionnaire, which "shall be signed by each party" and "attached to the . . . [c]onsent [o]rder, and filed with the court." R. 5:1-5(b)(1). Additionally, the arbitrator selected by the parties must sign an arbitrator disclosure form, attach it to the consent order, and file it with the court. R. 5:1-5(b)(2).

Importantly, per Rule 5:1-5(b)(3)(A), a consent order to arbitrate must not only be executed by the parties, but it must specifically state:

(i) the parties understand their entitlement to a judicial adjudication of their dispute and are willing to waive that right;

(ii) the parties are aware of the limited circumstances under which a challenge to the award may be advanced and agree to those limitations;

(iii) the parties have had sufficient time to consider the implications of their decision to arbitrate; and

(iv) the parties have entered into the . . . [c]onsent [o]rder freely and voluntarily, after due consideration of the consequences of doing so.

[Rule 5:1-5(b)(3)(A).]

Moreover, Rule 5:1-5(b)(3)(B) states, in part,

in all family proceedings involving child-custody and parenting-time issues, the . . . [c]onsent [o]rder shall provide that:

(i) a record of all documentary evidence shall be kept;

(ii) all testimony shall be recorded verbatim; and

(iii) the award shall state, in writing, findings of fact and conclusions of law with a focus on the best interests of the child standard.

[Rule 5:1-5(b)(3)(B).]

Rule 5:1-5(b)(3)(C) further requires that "in all family proceedings involving child support issues, the . . . [c]onsent [o]rder shall provide that the

21                                                    A-1426-22

award shall state, in writing, findings of fact and conclusions of law with a focus on the best-interests standard, and consistent with R[ule] 5:6A and Rules Appendix IX."

Here, the record shows that—other than signing the CO—the parties failed to satisfy the prerequisites set forth under Rule 5:1-5(b), rendering the CO unenforceable. And because the CO failed to include a mandatory questionnaire signed by the parties, an arbitrator disclosure form, or the specific terms required under Rule 5:1-5(b)(3), neither it, nor the challenged orders flowing from it, can survive. Ultimately, we are persuaded the glaring omissions in the CO left the trial court with no assurance the parties fully understood the consequences of removing their disputes over parenting time, child support, counsel fees, and other issues from the judicial arena to binding arbitration.

Reversed and remanded for further proceedings. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1426-22